SELPH *v.* STRICKER, et al.

No. 41436 April 11, 1960 119 So. 2d 351

*Crisler, Crisler & Bowling,* Jackson; *Ellis J. Farris,* Vicksburg, for appellant.

*Laub, Adams, Forman & Truly, E. C. Ward,* Natchez, for appellees.

KYLE, J.

This case is before us on appeal by Jessie Selph, claimant, from a judgment of the Circuit Court of Wilkinson County, affirming an order of the attorney-referee and the Mississippi Workmen's Compensation Commission denying the claim of the appellant against R. M. Stricker, employer, and Hartford Accident & Indem-

nity Company, his insurance carrier, for compensation and medical benefits for injuries suffered by the appellant as the result of a fall from a pecan tree, on November 1, 1957, while the appellant was engaged in thrashing and harvesting pecans for the said R. M. Stricker on lands owned by the said R. M. Stricker in the Buffalo Bayou area near Fort Adams, Mississippi.

The record shows that the appellee, R. M. Stricker, at the time the appellant was injured, was the owner of approximately 20,000 acres of grazing and timbered lands in Wilkinson County, including 6,000 acres of land covered with pecan trees, situated near Fort Adams, Mississippi. The appellee was engaged in the business of raising cattle, and in producing, harvesting and selling pecans in bulk quantities. The appellee had numerous pickers at work in his pecan groves and orchards during the harvesting season. The pickers picked up the pecans on shares, with the understanding that the picker's share would be a cash payment paid to the pickers as the pecans were weighed and delivered to the appellee at his pecan storage barn, the amount of such payment being based on the market value of such pecans on the local market the day the pecans were gathered. All of the pecans were to be delivered to the appellee for sale by him for his own account. The pickers in some areas received in cash an amount of money equal to the market value of one-half of the pecans gathered, and in other areas the pickers received in cash an amount of money equal to the market value of two-thirds of the pecans gathered.

The cause was heard before the attorney-referee on August 12, 1958.

The appellant, Jessie Selph, testified that he sustained his injury as a result of a fall when he stepped on a rotten limb high above the ground as he reached for a pole which was being handed to him by Willie Jones. He suffered a broken leg as a result of the fall and was hospitalized for a period of about three weeks, and was

still disabled as a result of his injury at the time of the hearing. The appellant stated that he had been employed to thrash pecans for Mr. Stricker during the four pecan seasons next preceding the date of his injury. The pecan harvesting season usually lasted about four months. The person who employed him was Willie Jones, who lived on Mr. Stricker's place. The appellant understood that Willie was Mr. Stricker's foreman, and Willie had authority to hire whoever he saw fit to hire. Willie transported the appellant and other employees to the place where they were to gather pecans each day in Mr. Stricker's truck. Willie "would put all the laborers to the woods and put them back to the pecan house." Willie would take the appellant to the trees that he thought best for thrashing. Mr. Stricker paid the money to Willie for the pecans harvested each day after they were weighed; Willie would then pay the other helpers; and Willie and the appellant divided what was left. Mr. Glen Whetstone weighed the pecans at Mr. Stricker's pecan house.

Willie Jones, who was called to testify as a witness for the employer, testified that he attended to Mr. Stricker's cattle the year around, but during the pecan season each year he gathered the pecan crop. Willie was asked how Jessie Selph happened to be gathering pecans with him. His answer was, that he had the crop in charge, that he asked Jessie if he wanted to work with him and gather pecans and that he and Jessie gathered pecans together on shares for Mr. Stricker. They had pickers picking up under the trees who were paid 50c a bucket, and Willie and Jessie, after paying the helpers, divided the money they had left between them. Willie stated that he took about four pickers with him, and Jessie thrashed the pecans. Willie considered that Jessie was working for him. On cross-examination Willie stated that he was 39 years old, and that he had worked for Mr. Stricker since he was 15 years old; that he lived in a house on Mr. Stricker's place and did not pay any

rent; that he was a full time employee of Mr. Stricker ' "Yes, sir, long as I been working for him. I been operating the pecan grove." He stated that he looked after the wild pecans every year there was a wild pecan crop—"they don't be a crop every year." But the wild pecans were the ones that he was in charge of, and the wild pecans were the ones that Jessie was thrashing at the time of his injury. Willie said, "That's my particular calling, that side over there."

Glen Whetstone testified that he was employed by Mr. Stricker during the fall of 1957 as supervisor of his cattle and pecan orchards and timber interests; that he scaled timber for Mr. Stricker and weighed his pecans and helped look after his cattle, along with his men at Fort Adams. Mr. Stricker told him what division he wanted to make of the pecans from the various sections down there. Each area had a different division to be made of the pecans. The pickers across Buffalo Bayou, or North of Buffalo Bayou, were paid for their pickings amounts of money equal to the local market price of two-thirds of the pecans picked. Whetstone stated that Jessie Selph came down there and helped in the harvesting of the pecan crop, but he did not hire him or supervise his work. He stated that Willie Jones carried Mr. Stricker's pickup truck across Buffalo Bayou and the surrounding area of Fort Adams to pick up pickers to harvest the pecans; that Willie was foreman for part of the area, and Willie had more to do with the Fort Adams pecan lands than he did; but, since he was in charge of the weighing and ticket making and trespassing, he would say that he was more in charge than Willie.

R. M. Stricker testified that in operating his 20,000 acres of land he had only six employees. But he carried workmens compensation insurance. Stricker was asked whether he hired Jessie Selph to pick up pecans for him. He stated that he never knew Jessie Selph, and did not recall ever seeing him until this accident. He stated that he did not authorize Willie to hire Jessie

Selph for him. But on cross-examination Mr. Stricker admitted that he had signed a statement dated December 12, 1957, which he was asked to identify, and in which he referred to Jessie Selph as one of his employees on November 1, 1957, and in which he stated that Jessie Selph did not live on his place and did not work for him except during the pecan harvest. ''The only work Jessie Selph does for me is to pick pecans.''

The attorney-referee found that the claimant had sustained an accidental injury on the date mentioned above, for which medical service and supplies were required; that the claimant suffered temporary total disability from November 1, 1957, to June 1, 1958; that, since June 1, 1958, the claimant had been temporarily partially disabled, and had not attained the point of maximum medical recovery at the time of the hearing; but that the claimant was not an employee of R. M. Stricker at the time of his injury, within the contemplation of the Mississippi Workmen's Compensation Law, and for that reason was not entitled to compensation benefits under the law. The attorney-referee therefore denied the claim, and the order of the attorney-referee was affirmed by the full commission and the circuit court.

 ■ The only point argued by the appellant's attorney as ground for reversal of the judgment of the lower court is that the attorney-referee, the commission and the circuit court erred in holding that the appellant was not an employee of R. M. Stricker and was not entitled to compensation and medical benefits under the Mississippi Workmen's Compensation Law. We think the attorney-referee and the commission erred in their finding that the appellant was not an employee of R. M. Stricker at the time of his injury. The testimony of Willie Jones, Glen Whetstone and R. M. Stricker himself, in our opinion, shows clearly that the appellant was an employee of Mr. Stricker at the time of his injury, and not an independent contractor.

This Court has defined a servant as "a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master." Crosby Lbr. & Mfg. Co. v. Durham, 181 Miss. 559, 179 So. 285.

The testimony shows that Willie Jones was a full time employee of Mr. Stricker; and that Willie had charge of the harvesting of the pecans on Mr. Stricker's Buffalo Bayou lands; that Willie hired pickers to gather the pecans, and that Willie hired the appellant to thrash the pecans as an aid to the harvesting. Willie had other pickers working with him and under his direction; and Willie transported the appellant and the other members of the picking crew to and from their work each day in Mr. Stricker's truck. Willie told the appellant what trees to thrash and Willie assisted the appellant in the thrashing of the pecans. The appellant was a common laborer. The job assigned to him required no particular skill. His employment was not to last for any specific period of time. The appellant had a right to quit work at any time that he pleased; and his employer had a right to terminate his employment at any time that he saw fit to do so. It can be readily seen that the appellant's employer had a right to control every phase of the appellants' work, and the employer exercised that right of control through his foreman, Willie Jones. The fact that the appellant received more pay for his services than the pickers on the ground did not affect his status as an employee of the owner of the business.

This Court has defined an independent contractor as "a person who contracts with another to do something for him, but who is not controlled by the other, nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." Crosby Lumber & Mfg. Co. v. Durham, 181 Miss. 559, 179 So. 285. By no stretch of the imagination can the appellant's status be brought within the definition

of an independent contractor. █ Neither was the appellant an employee of Willie Jones for the reason that Willie Jones was not an independent contractor, but Mr. Stricker's hired man and foreman of a crew of pickers, subject to Mr. Stricker's right to control with respect to all of his activities relating to the harvesting of the pecans.

In Carroll v. E. G. Laughlin & Sons, 220 Miss. 535, 71 So. 2d 461, this Court said:

"Where there exists a dual relationship of employee and contractor, and the authority and duties of the employee embrace the same subject matter as the contract, the court will not attempt a theoretical determination of whose control is being exercised in the performance of the contract. The right of control of the employer and independency of the contractor cannot coexist."

In that case the record showed that Richardson was the appellee's woods superintendent, and the Court held that Richardson's right to control Carroll's work as a truck driver was that of a woods superintendent for the appellee, and not that of an independent contractor. For the same reason, we hold in this case that the appellant was not an employee of Willie Jones, but was an employee of Mr. Stricker, and the attorney-referee and the commission should have so found.

For the reasons stated above, the judgment of the lower court and the order of the commission are reversed and judgment will be entered here in favor of the appellant and the cause remanded to the commission with instructions that the commission determine the extent of the appellant's disability and the amount of compensation and medical benefits to which he is entitled and award such compensation and medical benefits to the claimant.

Reversed and judgment rendered in favor of appellant, and cause remanded.

*Lee, Holmes, Arrington* and *Gillespie, JJ.,* concur.